JOHN T. BRESSLER v. COUNTY OF WAYNE.

[FILED SEPTEMBER 16, 1891.]

1. **Taxation:** NATIONAL BANK STOCK: DEBTS CANNOT BE DEDUCTED FROM. The owner of national bank stock, in listing his shares for taxation, is not entitled to deduct his *bona fide* indebtedness from the value of such shares of stock.

2. ———: FORMER DOCTRINE OVERRULED. The decision on the former hearing of the case, reported in 25 Neb. 468, is overruled.

REHEARING of case reported 25 Neb., 468.

*Northrop & Welch*, for plaintiff in error:

When the laws of any state permit a citizen thereof to deduct the sum of his credits, etc., the owner of shares of stock in a national bank situated in such state is entitled to de-

duct from the value of said shares his *bona fide* debts, and be taxed *upon the residue only.* (*People v. Weaver*, 100 U. S., 539; *Bank v. Britton*, 105 Id., 322; *Wasson v. Bank*, 8 N. E. Rep. [Ind.], 97; *Natl. Bank v. Paducah*, Thomp. Natl. Bk. Cases, 300; *Supervisors v. Stanley*, 105 U. S., 305; *Hills v. Bank*, Id., 319; *Boyer v. Boyer*, 113 Id., 689; *Ruggles v. Fond du Lac*, 10 N. W. Rep. [Wis.], 565; *Richards v. Rock Rapids*, 31 Fed. Rep. [Ia.], 505; *Whitbeck v. Bank*, 8 Sup. Ct. Rep. [O.], 1122; *Miller v. Heilbron*, 58 Cal., 133; *Wasson v. Bank*, 8 N. E. Rep. [Ind.], 97). In all matters affecting national banks the law of congress is paramount, and state legislation must be construed with reference thereto. (*Bank v. Dearing*, 91 U. S., 29; *People v. Weaver*, 100 Id., 539; *Boyer v. Boyer*, 113 Id., 689; *Ruggles v. Fond du Lac*, 10 N. W. Rep. [Wis.], 565; *Wasson v. Bank*, 8 N. E. Rep. [Ind.], 97; *Flint v. Alderman*, 99 Mass., 141.)

*Wm. Leese Attorney General*, and *J. D. King, contra*, cited, as to the meaning and proper use of the term " moneyed capital " : *Banking Co. v. Newark*, 121 U. S., 163; *Bank v. Davenport*, 123 Id., 83; *Hepburn v. Sch. Directors*, 90 Id., 482; *People v. Weaver*, 100 Id., 539; *Bank v. Britton*, 105 Id., 322; *Wasson v. Bank*, 8 N. E. Rep. [Ind.], 97.

NORVAL, J.

This case is on rehearing, the opinion being reported in 25 Neb., 468. The question involved is the right of the owner of shares in a national bank, having no other credits or moneyed capital, to have deducted, in the assessment and taxation of such shares, his *bona fide* debts. On the former hearing it was held that under section 5219 of the Revised Statutes of the United States he was entitled to such deduction.

Said section 5219 permits state taxation of the shares of

stocks in national banks, subject only to two restrictions: First, "That the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state;" and second, "That the shares of any national banking association, owned by non-residents of any state, shall be taxed in the city or town where the bank is located, and not elsewhere."

The second limitation is not important in this case. But it is claimed that by not allowing *bona fide* debts to be deducted in the assessment of shares in national banks the state thereby places a higher burden of taxation upon money invested in national banks than is imposed upon other moneyed capital, and therefore contravenes the first restriction imposed by congress in the section above referred to.

The supreme court of the United States has, in many cases, considered and construed the provisions of the act of congress which limit the power of the states in the taxation of national bank shares. A reference to some of these decisions will aid in the determination of the question involved in this case.

In *People v. Weaver*, 100 U. S., 539, it is held that the statute of the state of New York, which permits a taxpayer, in listing his property for taxation, to deduct the amount of his debts from the valuation of all his personal property, including moneyed capital, except his bank shares, is in conflict with the act of congress, in that shares of national banks are required to be assessed higher in proportion to their real value than other moneyed capital in the hands of citizens of the state is valued for taxation. It is further held that the rule of uniformity in the taxation of such shares applies to the valuation of the shares, as well as to the ratio of percentage laid on such valuation. To the same effect is *Supervisors v. Stanley*, 105 U. S., 305.

In *Pelton v. National Bank*, 101 U. S., 143, it is held

that where a state statute provides for the valuation of all moneyed capital for taxation at its true value, including shares of the national banks, and the taxing officers intentionally assess such shares at their actual value, while other moneyed capital was assessed far below its real value, such assessment of national bank stocks was in violation of section 5219 of the Revised Statutes.

In *Evansville National Bank v. Britton*, 105 U. S., 322 it is ruled that under the statute of Indiana, which allows deductions of *bona fide* debts to be made from all credits in listing the same for taxation, the assessing of national bank shares, without permitting the shareholder to deduct from their value the amount of his *bona fide* debts, is a discrimination forbidden by congress.

In the more recent case of the *Mercantile Bank v. Mayor*, 121 U. S., 138, the court in an able and exhaustive opinion construed the meaning of the words "other moneyed capital," as used in the act of congress. We quote from the opinion: "The key to the proper interpretation of the act of congress is its policy and purpose. The object of the law was to establish a system of national banking institutions, in order to provide a uniform and secure currency for the people, and to facilitate the operations of the treasury of the United States. * * The main purpose, therefore, of congress, in fixing limits to state taxation on investments in the shares of national banks, was to render it impossible for the state, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on a similar business and operations and investments of a like character. The language of the act of congress is to be read in the light of this policy.

"Applying this rule of construction we are led, in the first place, to consider the meaning of the words 'other moneyed capital,' as used in the statute. Of course it includes shares in national banks; the use of the word

'other' requires that.  If bank shares were not moneyed capital the word 'other,' in this connection, would be without significance.  But 'moneyed capital' does not mean all capital the value of which is measured in terms of money. In this sense, all kinds of real and personal property would be embraced by it, for they all have an estimated value as the subjects of sale.  Neither does it necessarily include all forms of investment in which the interest of the owner is expressed in money.  Shares of stock in railroad companies, mining companies, manufacturing companies, and other corporations are represented by certificates showing that the owner is entitled to an interest, expressed in money value, in the entire capital and property of a corporation, but the property of a corporation which constitutes its invested capital, may consist mainly of real and personal property, which, in the hands of individuals, no one would think of calling moneyed capital, and its business may not consist in any kind of dealing in money, or commercial representatives of money.

So far as the policy of the government in reference to national banks is concerned, it is indifferent how the states may choose to tax such corporations as those just mentioned, or the interest of individuals in them.  Or whether they should be taxed at all.  *  *  *  The business of banking, as defined by law and custom, consists in the issue of notes payable on demand, intended to circulate as money, where the banks are banks of issue; in receiving deposits payable on demand; in discounting commercial paper; making loans of money on collateral security; buying and selling bills of exchange; negotiating loans; and dealing in negotiable securities issued by the government, state and national, and municipal and other corporations.  These are the operations in which the capital invested in national banks is employed, and it is the nature of that employment which constitutes it in the eye of this statute 'moneyed capital.'  Corporations and individuals carrying on

these operations do come into competition with the business of national banks, and capital in the hands of individuals thus employed is what is intended to be described by the act of congress.    *    *    *

"The terms of the act of congress, therefore, include shares of stock or other interests owned by individuals in all enterprises in which the capital employed in carrying on its business is money, where the object of the business is the making of profit by its use as money. The moneyed capital thus employed is invested for that purpose in securities by way of loan, discount, or otherwise, which from time to time, according to the rules of the business, reduced again to money and reinvested. It includes money in the hands of individuals employed in a similar way, invested in loans, or in securities for the payment of money, either as an investment of a permanent character, or temporarily with a view to sale or repayment and reinvestment. In this way the moneyed capital in the hands of individuals is distinguished from what is known generally as personal property."

It follows from these decisions that any method of assessment of taxes which prohibits the owner of national bank shares, who owns no other credits or moneyed capital, from deducting his *bona fide* indebtedness from the value of such shares, and permits the deduction of such debts in the assessment of like property similarly situated, conflicts with the act of congress.

Was the rule of uniformity prescribed by the federal statute violated in the assessment of the plaintiff in error? In determining this question it will be necessary to examine some of the provisions of the revenue law of this state.

Sections 27, 30, and 33 of the revenue law are as follows:

"Sec. 27. In making up the amount of credits which any person is required to list for himself, or for any other

person, company, or corporation, he shall be entitled to deduct from the gross amount of credits the amount of all *bona fide* debts owing by such person, company, or corporation to any other person, company, or corporation for a consideration received; but no acknowledgment of indebtedness not founded on actual consideration, believed when received to have been adequate, and no such acknowledgment made for the purpose of being so deducted, shall be considered a debt within the meaning of this section; and so much only of any liability, as surety for others, shall be deducted as the person making out the statement believes he is legally and equitably bound and will be compelled to pay on account of the inability or insolvency of the principal debtor; and if there are other sureties who are able to contribute, then only so much as the surety in whose behalf the statement is made will be bound to contribute; *Provided*, That nothing in this section shall be so construed as to apply to any bank, company, or corporation exercising banking powers or privileges; or to authorize any deductions allowed by this section from the value of any other item of taxation than credits.

"Sec. 30. Every bank (not incorporated), banker, broker, or stock-jobber shall at the time fixed by this chapter for listing personal property, make out and furnish the assessor a sworn statement showing: *First* — The amount of property on hand or in transit. *Second*—The amount of funds in the hands of other banks, bankers, brokers, or others, subject to draft. *Third*—The amount of checks, or other cash items the amount thereof not being included in either of the preceding items. *Fourth*—The amount of bills receivable, discounted or purchased, and other credits due or to become due, including accounts receivable, and interest accrued but not due, and interest due and unpaid. *Fifth*—The amount of bonds and stocks of every kind, state and county warrants, and other municipal securities, and shares of capital stock of joint stock

or other companies or corporations, held as an investment or any way representing assets. *Sixth*—All other property appertaining to said business other than real estate (which real estate shall be listed and assessed as other real estate is listed and assessed under this act). *Seventh*—The amount of deposits made with them by other parties. *Eighth*—The amount of all accounts payable, other than current deposit accounts. *Ninth*—The amount of bonds and other securities exempt by law from taxation, specifying the amount and kind of each, the same being included in the preceding fifth item. The aggregate amount of the first, second, and third items in said statement shall be listed as moneys. The amount of the sixth item shall be listed the same as other similar personal property is listed under this chapter. The aggregate amount of the seventh and eighth items shall be deducted from the aggregate amount of the fourth item of said statement, and the amount of the remainder, if any, shall be listed as credits. The aggregate amount of the ninth item shall be deducted from the aggregate amount of the fifth item of such statement, and the remainder shall be listed as bonds or stocks.

"Sec. 33. The stockholders in every bank located within this state, whether such bank has been organized under the laws of this state or of the United States, shall be assessed and taxed on the value of their shares of stock therein, in the county, town, precinct, village, or city where such bank or banking association is located, and not elsewhere, whether such stockholders reside in such place or not. Such shares shall be listed and assessed with regard to the ownership and value thereof as they existed on the first day of April, annually, subject, however, to the restriction that taxation of such shares shall not be at a greater rate than is assessed upon any other moneyed capital in the hands of individual citizens of this state, in the county, town, precinct, village, or city where such bank is located. The shares of capital stock of national banks

not located in this state, held in this state, shall not be required to be listed under the provisions of this act."

It will be observed that section 27 authorizes the individual taxpayer to deduct the *bona fide* debts owing by him from the gross amount of his credits, and prohibits any deduction from the value of any other item or property of taxation than credits. The word "credits," as used in the section, was not intended to include notes, securities, accounts due, or other credits which are the assets of any bank, banker, broker, or stock-jobber, but was intended to cover debts due the taxpayer, growing out of the other ordinary business transactions. We must, therefore, look elsewhere for the rule which governs the assessment of moneyed capital invested in the banking business.

Section 33 declares that shares of stock in every bank within the state, whether incorporated under the laws of this state or of the United States, shall be assessed according to their value, subject to the restriction, "that the taxation of such shares shall not be at a greater rate than is assessed upon other moneyed capital in the hands of the individual citizens of this state." This limitation is the same as imposed by congress upon the states as a condition to the taxation of national banks. So it cannot be said that the legislature, in providing for the taxation of national banks, has unfavorably discriminated against them. The word "rate," as used in this section, applies as well to the valuation of the shares of the stockholder as to the ratio of tax to be levied thereon. There must be uniformity both in the assessment and the levying of the tax. National bank shares cannot be assessed at their full value, and "other moneyed capital" below its actual value. Looking to section 30, we find that in assessing the property of unincorporated banks, and that of bankers, brokers, and stock-jobbers, they are allowed to deduct the amount of their indebtedness to depositors and the amounts of all accounts payable, other than current deposit accounts, from

the amount of their bills receivable, and other credits due or to become due, but this deduction cannot be made from any other item of their property.

The fact that the unincorporated bank is entitled to such deduction is no valid reason why the debts of the owner of national bank stock should be deducted from the value of his shares in assessing them. National banks are assessed solely by taxing the shares or stock. In unincorporated banks there are no shares to tax, and the legislature, of necessity, was compelled to adopt a different method of taxing them by assessing the value of the capital therein invested, which is practically the difference between the value of the assets and the amount of liabilities. The shares of a national bank do not represent the assets of the bank, but rather the difference between the value of its property and its liabilities. While the method of assessing national banks is different from that by which a private bank or banker is assessed, the rule of uniformity is preserved, so that it cannot be said that the law of the state requires that national banks shall be taxed at a greater rate than is imposed upon the capital invested in the state banks.

It must, we think, be conceded that the larger part of the moneyed capital of the individual citizens of this state, within the meaning of the words "other moneyed capital," as defined by the supreme court of the United States, is in the hands of brokers and stock-jobbers and incorporated and unincorporated state banks. And as the state has not, in the taxation of the capital thus invested, unjustly discriminated against the national banks, the fact that, in the assessment of a small portion of the moneyed capital in the state which is not invested so as to come in competition with the national banks, the taxpayer is permitted to deduct his *bona fide* indebtedness from credits, is not such a discrimination as violates the rule of equality required by the legislation of congress. This principle was substantially recognized in the case of *Mercantile Bank v. Mayor,*

*supra.* In that case, the plaintiff, a national bank located in the city of New York, brought suit against the defendants to enjoin the collection of taxes levied upon the shares of the stockholders of the bank, claiming that the laws of the state exempts from taxation so much of the moneyed capital of the individual taxpayer as creates a discrimination against capital invested in such shares. The laws of the state of New York exempts from assessment shares of stock in trust companies, life insurance companies, deposits in savings banks, and bonds of the municipalities of the state. The court held the exemptions already mentioned did not effect an unfriendly or unlawful discrimination against national banks or the capital therein invested, nor does it result in taxing the shares of such banks at a higher rate than is levied upon other moneyed capital in the hands of individual citizens of the state.

So in the case of *Adams v. Nashville,* 95 U. S., 19, it is held that taxes assessed on national bank shares is not invalidated by reason of the exemption from taxation by state authority bonds issued by the city of Nashville in the hands of individuals.

The rule deducible from the decisions of the United States supreme court is, that where the rate fixed by the state for the taxation of capital in the hands of individual citizens, situated similarly to that invested in national banks, is not less than that placed upon national bank shares. The rule of uniformity prescribed by the act of congress is maintained, even though some moneyed capital in the state which is invested by individuals in businesses or enterprises which do not come in competition with national banks, is exempt from taxation, or is assessed at a less rate than is imposed upon shares of stock in national banks.

It is obvious that the laws of this state, providing for the taxation of national banks, are in perfect harmony with this rule, and that the plaintiff in error has no legal ground to complain because he was not permitted to de-

duct the amount of his debts from the value of his national bank stock. If our statute permitted debts to be deducted from the value of all kinds of property or from *all* credits in listing the same for assessment, as the laws of some of the states allow, then the indebtedness of the owner of national bank shares would have to be deducted from the value of his shares. But the proviso clause of section 27 of the revenue law of this state provides that the rule which allows the deduction of debts from credits shall not "apply to any bank company or corporation exercising banking powers or privileges." We therefore reach the conclusion that in this state, in the assessment of shares of national bank stock, the owners thereof are not entitled to deduct their *bona fide* indebtedness from the value of such shares of stock.

The judgment of the district court is

AFFIRMED.

THE other judges concur.