## BOARD OF COMMISSIONERS OF THE COUNTY OF JOHNSON *v.* JOHNSON ET AL.

[No. 21,317. Filed October 27, 1909.]

1. TAXATION.—*Property Taxable.—State Board of Tax Commissioners.—Decision.—Conclusiveness.*—The decision of the State Board of Tax Commissioners as to the value of taxable property is conclusive; but its decision as to what property is subject to taxation is not conclusive. pp. 80, 83.

2. JUDGMENT.— *Erroneous.— Payment.— Recovery of.— Collateral Attack.*—Where an erroneous judgment for taxes is paid, the judgment debtor cannot recover the portion alleged to be erroneous, since the judgment concludes him as to all matters litigable in the case, and since such action for the recovery thereof constitutes a collateral attack upon the judgment. p. 81.

3. TAXATION.—*Overvaluation.—Erroneous Rule of Appraisement.— Relief.*—Where taxing boards have adopted an erroneous rule of valuation, resulting in wrongful assessments, the courts will relieve. p. 83.

4. TAXATION.—*Valuations.—Including Exempted Property.—Indivisibility.*—Where the taxing officers assess for txation property which is exempt and property which is not, the courts will restrain the collection of the whole tax, where the assessments cannot be separated. p. 84.

5. TAXATION.—*Proper Subjects of.—Legislature.—State Board of Tax Commissioners.*—The selection of the subjects for taxation is a legislative question, and the State Board of Tax Commissioners does not constitute a court to determine such question. p. 84.

6. CONSTITUTIONAL LAW.— *Taxation.— Due Process.—Discrimination.*—The federal Constitution guaranteeing due process of law, equal protection of the laws, and equal privileges and immunities, does not prescribe a rule for taxation by the states, and they may adjust their systems in any proper and reasonable manner. p. 85.

7. CONSTITUTIONAL LAW.—*Equal Protection of the Law.—Taxation.*—A state tax law must affect alike all persons in similar circumstances, or it will constitute a deprivation of the equal protection of the law, and therefore be invalid. p. 85.

8. CONSTITUTIONAL LAW.— *Taxation.*— *Classification.*— Classes of persons may be exempted from taxation upon reasonable grounds, different kinds of property may be taxed in different ways, and different provisions may be applied to different classifications of persons in the same line of business, so long as the constituent classes are treated alike. p. 86.

9. TAXATION.—*Classes.*—*Statutes.*—*Applicability.*—Whether a taxing statute applies to a large or a small class is a legislative question. p. 86.

10. TAXATION.—*Uniformity.*—Taxation is not uniform when it applies to a portion only of a class, or singles out individuals, or exempts unequally individuals or classes. p. 87.

11. CONSTITUTIONAL LAW.—*Taxation.*—*Discrimination.*—Classifications in tax laws must be based upon natural reasons inhering in the subject-matter. p. 87.

12. CONSTITUTIONAL LAW.—*Taxation.*—*Banks.*—*Discriminations.*— Section 8469 Burns 1905, Acts 1903, p. 49, §27, providing that in assessing unincorporated banks for taxation the deposits shall be deducted from the gross assets, less property exempt, the remainder constituting the proper valuation, is not invalid for discrimination, nor for unequal protection of the laws, nor as a local or special law, incorporated banks being taxed upon the same basis, but by a different method of arriving at the valuation. pp. 88, 92.

13. TAXATION.—*Statutes.*—*Basis of.*—The purpose of tax laws is the taxation of all property upon a just, uniform and equal assessment. p. 90.

14. TAXATION.— *Assessment.*— *Deductions of Indebtedness from Property.*—*Banks.*—No good reason is shown why banks should be permitted to deduct their indebtedness from their total assets when individuals are not allowed to do so, but where unincorporated, as well as incorporated, banks are permitted to do so, neither class of banks has any cause for complaint. p. 91.

15. TAXATION.—*Unincorporated Banks.*—*Deduction of Indebtedness.*—An individual banker cannot deduct his indebtedness not incurred in the banking business from his bank assets, since they are embraced in a separate classification (§§10140, 10161 Burns 1908, Acts 1891, p. 199, §§1, 12). p. 92.

16. CONSTITUTIONAL LAW.— *Taxation.*— *Valuation.*— *Rates.*—Uniformity in the rules for the valuation of property for taxation is not required, nor are uniform or equal rates, but a just valuation is required. p. 92.

17. CONSTITUTIONAL LAW.— *Taxation.*— *Exemptions.*— Exemptions from taxation constitute inequality, but they may lawfully be made; and different classes of property may be differently classified for taxation. p. 93.

18. CONSTITUTIONAL LAW.—*Taxation.—Discriminations.—Banks.—Individuals.*—Section 10210 Burns 1908, Acts 1907, p. 624, §3, providing that banks shall be valued for taxation by deducting the total indebtedness from the total assets, is not invalid because of discrimination, individuals not being permitted to make such deductions. p. 93.

19. CONSTITUTIONAL LAW.—*Taxation.—Banks.—Statutes.—Local.*—The statute (§8469 Burns 1905, Acts 1903, p. 49, §27), providing for the taxation of unincorporated banks, is not local nor special. p. 94.

20. TAXATION.—*Banks.—Exemptions.—Deductions.*—The deduction of the deposits from the total assets of banks, for taxation purposes, does not constitute an exemption, but merely a deduction, since the depositors pay on the deposits, and thus double taxation is avoided. p. 95.

21. CONSTITUTIONAL LAW.—*When Questions of, Decided.—Invalidity in Part.*—The constitutional validity of an act will not be decided where the provisions thereof are not so interwoven that the whole must fail if any portion is invalid, or where the decision can be placed on other grounds. p. 95.

From Johnson Circuit Court; *Elba L. Branigin*, Special Judge.

Action by Grafton Johnson and another against the Board of Commissioners of the County of Johnson. From a judgment for plaintiffs, defendant appeals. *Affirmed.*

*James Bingham*, Attorney-General, *W. H. Thompson, E. M. White, A. G. Cavins* and *George I. White*, for appellants. *E. A. McAlpin*, for appellees.

MYERS, J.—Appellees, as copartners conducting a private banking business, after March 1, 1905, made a tax return in accordance with section twenty-seven of the act of 1903 (Acts 1903, p. 49, §8469 Burns 1905), and thereunder claimed the right to deduct their deposits from all taxable property owned by them, except real estate, and listed under the first six clauses of that section, upon which basis the amount of property upon which they were taxable would have been $1,483.92, and the taxes $33.98. Under the fifth subdivision of §8469, *supra*, they listed $6,000, par value of preferred stock in a domestic corporation as exempt from

taxation. The county board of review added this sum to the $1,483.92, and upon appeal the State Board of Tax Commissioners raised the assessment to $25,760, which sum appears to have been arrived at by deducting deposits from items scheduled under clause four, and refusing credit for deposits against items scheduled under the first, second, third, fifth and sixth clauses of §8469, *supra,* and upon that basis taxes were entered upon the tax duplicate to the amount of $589.90, which appellees paid, including $33.98, admitted by them to be just.

They then filed a petition before the board of commissioners for a refunding order for $555.92, the alleged excess of unlawful taxes. The petition was rejected, and an appeal taken to the circuit court, where a demurrer was filed by the board and overruled, and, the board refusing to plead further, judgment was rendered for the $555.92 and interest, from which this appeal is prosecuted.

The complaint sets out the history of the transaction in detail, alleging that no evidence was heard by the county board of review, nor by the State Board of Tax Commissioners, that the assessment was based wholly upon the list returned by appellees, that such list was true, that the value as stated was true, and that such value was so taken by the taxing officers and boards. The list is set out. The petition alleges that no taxpayers other than appellees, similarly situated and engaged in the same business, were refused the right to deduct from all of their property their deposits held on March 1, 1905, and that the assessment was made solely by refusing to allow deduction of deposits from any property except bills receivable and other credits; that this was a wrongful and unjust discrimination against them; that the attempt to assess and collect the sum of $555.92 was an attempt to take their property without due process of law, and a denial of the equal protection of the law, in violation of section one of the 14th amendment to the federal Constitution.

Two questions, arising upon the demurrer to the complaint, are presented by appellant: (1) As to the construction and validity of §8469, *supra;* (2) as to the conclusiveness of the assessment made by the State Board of Tax Commissioners.

If the assessment made by the state board is conclusive, it will be unnecessary to examine the first proposition.

We have not been able to bring our minds to the conclusion that the assessment by the State Board of Tax Commissioners is final. The statute does not so provide.

1. And while, with respect to the subject of valuation, its conclusions ought to be, and are, final, it is not true that that tribunal, large as its powers necessarily are, can arbitrarily, and in the face of a statute, assess property which is not taxable. There is a very wide distinction between the taxable valuation of property, and its taxable character; and that, as we conceive it, is the true distinction, and the one actually made by the cases.

The point involved in *Cleveland, etc., R. Co.* v. *Backus* (1893), 133 Ind. 513, 18 L. R. A. 729, so far as it is applicable here, was not whether the railway property was assessable, but as to its valuation by the method of classification provided by the statute and adopted by the commissioners.

There are expressions used in the opinions of the cases of *Youngstown Bridge Co.* v. *Kentucky, etc., Bridge Co.* (1894), 64 Fed. 441, and *McLeod* v. *Receveur* (1896), 71 Fed. 455, 18 C. C. A. 188, which would seem to bear out appellant's contention, but a careful consideration of the facts in those cases do not justify that conclusion. In the former case the board of equalization, as it was then called, had assessed a bridge, partly in Indiana and partly in Kentucky, and it was insisted that the valuation was too great, owing to the fact that a greater portion of the bridge was in Kentucky, and was not the subject of valuation in Indiana, and it was proposed to impeach the valuation by showing that the board had committed an error in fact, or a

mistake in judgment, as to the property within the jurisdiction of the taxing power of Indiana. It is said in the opinion that the first question to be determined by the board is, What property is properly subject to taxation by it? While the board has large powers, it is still a tribunal of restricted powers, and the subject of its jurisdiction—what it may assess—is fixed by statute, and it can exercise no powers beyond that; but it is insisted that if it exercises a purely arbitrary power, and selects for assessment and valuation property wholly beyond its jurisdiction, there can be no relief. We cannot accede to that proposition, and in the particular case last cited we do not understand the facts as making that case. There could be no separation of the subject-matter by which it could clearly be determined that the board had exceeded its jurisdiction to assess, for the reason that it could not be determined that the board had placed a valuation on property beyond the state line, and it must be presumed that it had valued only what it was authorized to value, and certainly the cases upon which that case is founded are not authority to the extent claimed for them in the opinion.

In the case of *First Presbyterian Church* v. *City of New Orleans* (1878), 30 La. Ann. 259, 31 Am. Rep. 224, a judgment had been rendered in the lower court having jurisdiction, in which case the question of the assessment of certain property could have been litigated and adjudicated. The judgment was paid, and then an action was brought to recover the money paid on the judgment, upon the theory that the judgment was erroneous, because the property upon which the assessment was made was overvalued. Upon every applicable principle of jurisprudence that action would not lie, both because the question could have been, and must be presumed to have been, adjudicated, and because it was a collateral attack upon the judgment.

In the cases of *County of Chicago* v. *St. Paul, etc., R. Co.*
(1880), 27 Minn. 109, 6 N. W. 454, and *Birmingham* v. *Sham*
(1849), 10 Ad. & E. (N. S.) (59 Eng. Com. Law) *868,
there were rights of appeal for the correction of the errors,
and the appeals were sustained.

The views we entertain are those entertained by the cir-
cuit court of appeals in *McLeod* v. *Receveur* (1896), 71 Fed.
455, 18 C. C. A. 188, where the question was brought in re-
view. The court there treats the case as one where the prop-
erty in Indiana was excessively valued, because of an error
of judgment as to how much of the bridge was in Indiana.
It will be seen at once that that court treated the matter as
a case of overvaluation, which is everywhere conceded to
be beyond review by the courts, and not as a case of wrong
principle of assessment.

This view is in line with the decisions of the Supreme
Court of the United States, as declared in *Pittsburgh, etc.,
R. Co.* v. *Backus* (1894), 154 U. S. 421, 14 Sup. Ct. 1114,
38 L. Ed. 1031, and *Cleveland, etc., R. Co.* v. *Backus* (1894),
154 U. S. 439, 14 Sup. Ct. 1122, 38 L. Ed. 1041, involving
the same question as the case of *Cleveland, etc., R. Co.* v.
*Backus* (1893), 133 Ind. 513, 18 L. R. A. 729, where the
rule is distinctly adopted that, in the assessment and valua-
tion of railways, the property is considered as a whole, and
while the portion of the road located in another state may
be considered in determining values, the valuation is made
on property in Indiana in the proportion which the length
in Indiana bears to the whole length of the road, and such
valuation is not upon property outside the State. Under
that rule the result reached in *Youngstown Bridge Co.* v.
*Kentucky, etc., Bridge Co., supra,* from all that appears,
may have been a proper valuation. But in the case of
*Cleveland, etc., R. Co.* v. *Backus* (1893), 133 Ind. 513, 18
L. R. A. 729, it is conceded that a gross error in the system
upon which the valuation is made may be a ground for in-

voking the action of the courts.  So in *Stanley* v. *Supervisors, etc.* (1887), 121 U. S. 535, 7 Sup. Ct. 1234, 30 L. Ed. 1000, while recognizing the plenary powers of taxing boards, and their conclusiveness as to matters of valuation of property within their jurisdiction, and the manner of arriving at values, it is said:  "When the overvaluation of property has arisen from the adoption of a rule of appraisement which conflicts with a constitutional or statutory direction, and operates unequally, not merely on a single individual, but on a large class of individuals, or corporations, a party aggrieved may resort to a court of equity to restrain the exaction of the excess, upon payment or tender of what is admitted to be due."

The true rule, as we conceive it to be, is that where the question is one of valuation, or of determining the extent of the property in relation to other property of which it may form a part in fixing a valuation, in the absence of fraud, the action of the State Board of Tax Commissioners is final; but where there is an arbitrary selection of the property to be taxed, in violation of the Constitution or the statute, the act is beyond the jurisdiction of the board and is subject to review by the courts.  *Hart* v. *Smith* (1902), 159 Ind. 182, 58 L. R. A. 949, 95 Am. St. 280; *Chicago, etc., R. Co.* v. *Babcock* (1907), 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636; *Central Pac. R. Co.* v. *California* (1896), 162 U. S. 91, 16 Sup. Ct. 766, 40 L. Ed. 903; *Stanley* v. *Supervisors, etc., supra; Wilmington, etc., R. Co.* v. *Brunswick County* (1875), 72 N. C. 10; *Andrews* v. *King County* (1890), 1 Wash. 46, 23 Pac. 409, 22 Am. St. 136; *Board, etc.,* v. *Sergeant* (1880), 24 Kan. 572; *Baldwin* v. *Shine* (1886), 84 Ky. 502, 2 S. W. 164; *Jones* v. *Davis* (1880), 35 Ohio St. 474; *Horne* v. *Green* (1876), 52 Miss. 452; *Foster* v. *City of Kenosha* (1860), 12 Wis. 688.  This view is, to our minds, not only the better and safer one—if there is, in fact, any other recognized—but it has the express

approval of this court in at least three cases: *City of Jeffersonville* v. *Louisville, etc., Bridge Co.* (1908), 169 Ind. 645; *Senour* v. *Ruth* (1895), 140 Ind. 318; *Hart* v. *Smith, supra.*

In the latter case the whole assessment was held void on the ground that part of the assessment was legal and part illegal, because the assessment embraced matters not the subject of taxation, but arbitrarily selected by the state board, and there was no way of ascertaining the legal portion.

The selection of the subjects for taxation is a legislative power, and is not delegated to the assessing or valuing boards, and they have no discretion. *State Board, etc.,* v. *Holliday* (1898), 150 Ind. 216, 42 L. R. A. 826; *State, ex rel.,* v. *Halter* (1898), 149 Ind. 292; *Hyland* v. *Brazil Block Coal Co.* (1895), 128 Ind. 335; *State, ex rel.,* v. *Board, etc.* (1878), 30 La. Ann. 261; *Bell* v. *Meeker* (1906), 39 Ind. App. 224; *University of the South* v. *Skidmore* (1888), 87 Tenn. 155, 9 S. W. 892; *Memphis, etc., R. Co.* v. *Gaines* (1877), 3 Tenn. Ch. 478; *City of New Orleans* v. *People's Bank* (1880), 32 La. Ann. 82; *City of New Orleans* v. *Fourchy* (1878), 30 La. Ann. 910.

The State Board of Tax Commissioners is not a court in such sense that its conclusions are final as to what are the legislative subjects of taxation. *First Nat. Bank* v. *Isaacs* (1903), 161 Ind. 278; *Hart* v. *Smith, supra; Cleveland, etc., R. Co.* v. *Backus* (1893), 133 Ind. 513, 18 L. R. A. 729.

A more difficult question is presented by the other proposition. Appellant's claim is that §8469, *supra*, should be construed to allow deposits to be deducted only from the credits proper of the copartnership, and that if said section is to be construed otherwise it is invalid and unconstitutional, as denying the equal protection of the laws under the federal Constitution, is local and special in character, and provides an unequal rate of assessment for taxation and an unjust valuation under the state Constitution.

The federal Constitution has not undertaken to lay down

a hard and fast rule with respect to due process of law, the equal protection of the laws, nor as to privileges and

6.  immunities, nor does the equal protection clause prevent the states from adjusting their systems of taxation in all proper and reasonable ways. *Davidson* v. *New Orleans* (1877), 96 U. S. 97, 24 L. Ed. 616; *Bells Gap R. Co.* v. *Pennsylvania* (1890), 134 U. S. 232, 10 Sup. Ct. 533, 33 L. Ed. 892; *Cook* v. *Marshall County* (1905), 196 U. S. 261, 25 Sup. Ct. 233, 49 L. Ed. 471; *Clark* v. *Titusville* (1902), 184 U. S. 329, 22 Sup. Ct. 382, 46 L. Ed. 569; *Florida, etc., R. Co.* v. *Reynolds* (1902), 183 U. S. 471, 22 Sup. Ct. 176, 46 L. Ed. 283; *Reymann Brewing Co.* v. *Brister* (1900), 179 U. S. 445, 21 Sup. Ct. 201, 45 L. Ed. 269; *Williams* v. *Fears* (1900), 179 U. S. 270, 21 Sup. Ct. 128, 45 L. Ed. 186; *Levy* v. *State* (1903), 161 Ind. 251; *Kersey* v. *City of Terre Haute* (1903), 161 Ind. 471; *City of Terre Haute* v. *Kersey* (1902), 159 Ind. 300, 95 Am. St. 296.

If all persons that are in like circumstances or affected alike are treated under the law the same, there is no deprivation of the equal protection of the law. *Sellers* v.

7.  *Hayes* (1904), 163 Ind. 422; *McKinster* v. *Sager* (1904), 163 Ind. 671, 68 L. R. A. 273, 106 Am. St. 268; *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 92 Am. St. 319; *Savannah, etc., Railway* v. *Savannah* (1905), 198 U. S. 392, 25 Sup. Ct. 690, 49 L. Ed. 1097; *Field* v. *Barber Asphalt Pav. Co.* (1904), 194 U. S. 618, 24 Sup. Ct. 784, 48 L. Ed. 1142; *Cotting* v. *Kansas City Stock-Yards Co.* (1901), 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92; *Magoun* v. *Illinois Trust, etc., Bank* (1898), 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037; *Duncan* v. *Missouri* (1894), 152 U. S. 377, 14 Sup. Ct. 570, 38 L. Ed. 485; *Bells Gap R. Co.* v. *Pennsylvania, supra; Walston* v. *Nevin* (1888), 128 U. S. 578, 9 Sup. Ct. 192, 32 L. Ed. 544; *Kentucky Railroad Tax Cases* (1885), 115 U. S. 321, 6 Sup. Ct. 57, 29 L. Ed. 414; *Wurts* v. *Hoagland* (1885), 114 U. S. 606, 5 Sup. Ct. 1086, 29 L. Ed. 229; *United States* v. *Cruikshank* (1875), 92 U. S. 542,

23 L. Ed. 588. Conversely, a law which operates upon some persons or corporations, and not upon others like situated or circumstanced, or in the same class, is invalid. *Atchison, etc., R. Co. v. Matthews* (1899), 174 U. S. 96, 19 Sup. Ct. 609, 43 L. Ed. 909; *Gulf, etc., R. Co. v. Ellis* (1897), 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666.

So, classes of persons may be exempt from taxation upon reasonable grounds, or different kinds of property be taxed in different ways. *Western Union Tel. Co. v. Indiana* (1897), 165 U. S. 304, 17 Sup. Ct. 345, 41 L. Ed. 725; *Pacific Express Co. v. Seibert* (1892), 142 U. S. 339, 12 Sup. Ct. 250, 35 L. Ed. 1035. Persons engaged in the same line of business may be classified, and different provisions applied to each class, without depriving any of them of the equal protection of the laws. *St. John v. New York* (1906), 201 U. S. 633, 26 Sup. Ct. 554, 50 L. Ed. 896. Corporations, individuals, wholesale and retail dealers, domestic and foreign corporations, may be separately classified and taxed differently, so long as the constituent classes are treated alike. *Henderson v. London, etc., Ins. Co.* (1893), 135 Ind. 23, 20 L. R. A. 827, 41 Am. St. 410; *State, ex rel., v. Smith* (1902), 158 Ind. 543, 63 L. R. A. 116; *Daniels v. State* (1898), 150 Ind. 348; *Commonwealth v. Edgerton Coal Co.* (1894), 164 Pa. St. 284, 304, 30 Atl. 129; *Bells Gap R. Co. v. Pennsylvania, supra; Home Ins. Co. v. New York* (1890), 134 U. S. 594, 10 Sup. Ct. 593, 33 L. Ed. 1025; *State v. Travelers Ins. Co.* (1900), 73 Conn. 255, 47 Atl. 299; *Singer Mfg. Co. v. Wright* (1895), 97 Ga. 114, 25 S. E. 249, 35 L. R. A. 497.

Whether a statute is applicable to a large or small class is a legislative, and not a judicial, question. *State, ex rel., v. Smith, supra; Board, etc., v. State, ex rel.* (1897), 147 Ind. 476, 486; *Mode v. Beasley* (1896), 143 Ind. 306; *Pennsylvania Co. v. State* (1895), 142 Ind. 428; *Young v. Board, etc.* (1894), 137 Ind. 323; *Bell v. Maish* (1894), 137 Ind. 226.

But taxation is not uniform or equal when it applies to a portion of a class, and omits a portion. The object sought to be attained is not only to prevent the singling out of any person or class of persons as the subjects for discriminating or hostile legislation, but also to prevent inequality by conferring exemptions or immunities upon persons or classes of persons. *Fallbrook Irrigation District* v. *Bradley* (1896), 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; *Whitbeck* v. *Mercantile Nat. Bank* (1888), 127 U. S. 193, 8 Sup. Ct. 1121, 32 L. Ed. 118; *Santa Clara County* v. *Southern Pac. R. Co.* (1886), 118 U. S. 394, 6 Sup. Ct. 1132, 30 L. Ed. 118; *Cache County* v. *Jensen* (1900), 21 Utah 207, 61 Pac. 303; *Nashville, etc., R. Co.* v. *Taylor* (1898), 86 Fed. 168; *Railroad & Telephone Cos.* v. *Board, etc.* (1897), 85 Fed. 302; *Railroad Tax Cases* (1882), 13 Fed. 722; *Atchison, etc., R. Co.* v. *Clark* (1899), 60 Kan. 826, 58 Pac. 477, 47 L. R. A. 77.

The classification itself must be based upon natural reasons, upon reasons which naturally inhere in the subject-matter, upon a real difference existing between the classes, so as to produce no distinction between members of the same class. *State* v. *Barrett* (1909), 172 Ind. 169; *Chandler Coal Co.* v. *Sams* (1908), 170 Ind. 623; *Republic Iron, etc., Co.* v. *State* (1903), 160 Ind. 379, 62 L. R. A. 136; *Street* v. *Varney Electrical Sup. Co.* (1903), 160 Ind. 338, 61 L. R. A. 154, 98 Am. St. 325; *Parks* v. *State* (1902), 159 Ind. 211, 59 L. R. A. 190; *Dixon* v. *Poe* (1902), 159 Ind. 492, 60 L. R. A. 308, 95 Am. St. 309; *Davis Coal Co.* v. *Polland, supra; State* v. *Hogreiver* (1899), 152 Ind. 652, 45 L. R. A. 504; *City of Indianapolis* v. *Navin* (1898), 151 Ind. 139, 41 L. R. A. 337; *Pennsylvania Co.* v. *State, supra; McLean* v. *State* (1909), 211 U. S. 539, 29 Sup. Ct. 206, 53 L. Ed. 315; *Ex parte Young* (1908), 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932; *Minnesota Iron Co.* v. *Kline* (1905), 199 U. S. 593, 26 Sup. Ct. 159, 50 L. Ed. 322; *Field* v. *Barber Asphalt Pav,*

Co., supra; Cotting v. Kansas City Stock-Yards Co., supra; Williams v. Fears, supra; American Sugar Refining Co. v. Louisiana (1900), 179 U. S. 89, 21 Sup. Ct. 43, 45 L. Ed. 102; Erb v. Morasch (1900), 177 U. S. 584, 20 Sup. Ct. 819, 44 L. Ed. 897; Petit v. Minnesota (1900), 177 U. S. 164, 20 Sup. Ct. 666, 44 L. Ed. 716; Clark v. Kansas City (1900), 176 U. S. 114, 20 Sup. Ct. 284, 44 L. Ed. 392; Orient Ins. Co. v. Daggs (1899), 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552; Magoun v. Illinois Trust, etc., Bank (1898), 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037; New York, etc., R. Co. v. New York (1897), 165 U. S. 628, 17 Sup. Ct. 418, 41 L. Ed. 853; Gulf, etc., R. Co. v. Ellis, supra; Lawton v. Steele (1894), 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385; Budd v. New York (1892), 143 U. S. 517, 12 Sup. Ct. 468, 36 L. Ed. 247; Pacific Express Co. v. Seibert (1892), 142 U. S. 339, 12 Sup. Ct. 250, 35 L. Ed. 1035; Minneapolis, etc., R. Co. v. Beckwith (1889), 129 U. S. 26, 9 Sup. Ct. 207, 32 L. Ed. 585; Minneapolis, etc., R. Co. v. Herrick (1888), 127 U. S. 210, 8 Sup. Ct. 1176, 32 L. Ed. 109; Missouri Pac. R. Co. v. Mackey (1888), 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107; Michigan Railroad Tax Cases (1905), 138 Fed. 223; Ames v. Union Pac. R. Co. (1894), 64 Fed. 165; Milwaukee Electric R., etc., Co. v. City of Milwaukee (1897), 95 Wis. 42, 69 N. W. 796; Boston, etc., R. Co. v. State (1855), 32 N. H. 215; Kirby v. Pennsylvania R. Co. (1874), 76 Pa. St. 506; McAunich v. Mississippi, etc., R. Co. (1866), 20 Iowa 338; Wellman v. Chicago, etc., R. Co. (1890), 83 Mich. 592, 47 N. W. 489; State v. Loomis (1893), 115 Mo. 307, 22 S. W. 350, 21 L. R. A. 789; State, ex rel., v. Hammer (1880), 42 N. J. L. 435.

Under the tax law of 1872 (Acts 1872 [s. s.], pp. 57, 75, §57) all banks were put in the same class. Deposits and accounts payable, other than current deposit accounts, were deducted from credits proper; and bonds or other securities exempt by law were deducted from bonds and stocks.

Under the tax law of 1881 (§§6343-6345 R. S. 1881) a distinction was made between incorporated and unincorporated banks, and unincorporated banks were permitted to deduct from credits proper the deposits and accounts payable other than current deposits. Incorporated banks were permitted, in fixing the taxable values of their stock, to deduct from their credits their *bona fide* indebtedness, as in the case of individuals.

Under the act of 1891 (Acts 1891, p. 199, §59, §8469 Burns 1894) unincorporated banks were permitted to deduct their deposits from credits only, and the law was not changed as to incorporated banks.

By the act of 1895 (Acts 1895, p. 21, §5, §8469 Burns 1901), a radical change, by which, by the letter of the statute, unincorporated banks were specifically authorized to deduct their deposits from moneys, credits and all their other assets other than real estate, while individuals could only deduct their indebtedness from credits proper, and incorporated banks were permitted to deduct the assessed value of their real estate, tangible property, and their indebtedness in fixing the value of the shares which were taxed to the individual owners. The act of 1903 (Acts 1903, p. 49, §27, §8469 Burns 1905), amending said act of 1895, changed only the time of assessment.

Under the present law, enacted in 1907 (Acts 1907, p. 624, §3, §10210 Burns 1908), unincorporated and incorporated banks are placed in the same class, and each is permitted to deduct the assessed value of real estate and indebtedness in fixing the value of taxable property. This shows a marked variance in the manner of making assessments at different stages of the State's history. But in the last analysis it will not appear to be a marked difference in results, so far as banks are concerned. Take the case in hand: The total assets employed in the banking business, other than stocks exempt and real estate, were $67,972.24, while the deposits were $66,488.32. The deposits are clearly an indebtedness,

but what was there to offset or represent them? Just as clearly the money on hand; the money in the hands of other bankers, which is in reality only a credit, the bills and accounts receivable, stocks held by the bank which are exempt from taxation, and the real estate taxed, which, in case of a copartnership, insolvency or winding up, must be applied primarily to the payment of the partnership debts. In case of an incorporated bank, it would deduct from the aggregate of its assets—and prior to 1907 its real estate—the amount of the indebtedness in ascertaining the value of the shares for taxation. The real value of the property owned by an individual would be found by deducting from his assets—other than money, stocks and bonds exempt, and real estate—his liabilities or indebtedness.

But for the purpose of taxation in the case of incorporated banks, the assessment is based upon the value of the assets after deducting the real estate otherwise taxed, and tangible property otherwise taxed, and indebtedness, which is precisely the result reached by the statute in question as to unincorporated banks.

If the bare proposition were presented that unincorporated banks were permitted to deduct from all their assets, including money on hand, their indebtedness, and such deduction is refused to incorporated banks, without any other consideration of practical effect thereof, one might easily conclude that a grave inequality would result in favor of the unincorporated bank.

The spirit of the taxing laws is not the taxation of apparent values, disassociated from all else, nor the taxation of all property at its gross value, but by securing a

13. just valuation upon principles of uniformity, equality and justice. *Hart* v. *Smith* (1902), 159 Ind. 182, 58 L. R. A. 949, 95 Am. St. 280; *First Nat. Bank* v. *Turner* (1900), 154 Ind. 456; *Florer* v. *Sheridan* (1894), 137 Ind. 28, 41, 23 L. R. A. 278; *Wetmore* v. *Multnomah County* (1877), 6 Ore. 463.

With this principle in view, let us turn the proposition around and face it. If the holder of shares is taxed only upon values, after deducting the indebtedness, it necessarily results that the money on hand enters into the value of the shares quite as much as credits proper, and it just as necessarily follows that, in permitting the deduction of the indebtedness, the deduction is permitted from money proper, and real estate is also deducted, for the value of the stock is represented by all the assets, and if the unincorporated bank cannot do the same thing, then it is discriminated against. So that it will be seen that in effect and practice the result is the same with respect to banks. By the same process, the individual is discriminated against, through the deduction allowed to the shareholders in incorporated banks, because the money on hand and other assets are offset by the obligation for the deposits, and this is true whether it is an unincorporated or an incorporated bank, while the individual is not permitted to deduct his indebtedness from money on hand, and we believe that it has never been held that banks may not be thus classified as against the individual.

Money is an asset, as much so as bills receivable. It is after all but a measure of value. Bills receivable are the evidence of value, so that after all it resolves itself into the question of selection by the legislature, rather than to any question of discrimination, so far as the matter of taxation is concerned.

It would probably be impossible to arrive at any very satisfactory reason why banks, whether incorporated or not, should be permitted, in effect, to deduct indebtedness from money possessed by them, and the individual not be permitted to do the same thing. But that is the effect; and if the same result is reached as to unincorporated banks as in case of the incorporated bank, and the latter instance is not a discrimination against the individual, certainly the former cannot be. In fixing the value of the

shares of stock, the assessed value of real estate, as well as the value of other taxable property, is deducted from the gross assets, thus indirectly affecting the value of the stock. But, for the purpose of taxation, real estate is classified by itself and taxed, and thus the value of the shares reduced for the same purpose. It was doubtless the legislative view, in the enactment in question, to place banks as nearly upon an equality in the taxing results as possible. In practical effect, we do not see how it could have come nearer that end. We think there cannot be said to be any distinction or discrimination as between unincorporated and incorporated banks, in violation of the equal protection clause of the federal Constitution, or the uniform rate and equal assessment, or the local or special law clause of the state Constitution. They are assessed in the same spirit. *First Nat. Bank* v. *Turner, supra.* If there be no essential discrimination between the assessment of incorporated and unincorporated banks, and none between the incorporated bank and the individual, and the same result is accomplished as to the unincorporated bank, it is difficult to see how any different result can be reached as between the unincorporated bank and individuals.

It is quite clear that the individual banker would have no right to deduct indebtedness outside the banking indebtedness, for that is embraced in another classification. §§10140, 10161 Burns 1908, Acts 1891, p. 199, §§1, 12.

Perfect equality of assessment is practically impossible, nor does the Constitution require uniformity in the methods or rules of assessment or valuation, but it does require a just valuation of all property, so that the burdens may be distributed with uniformity. That is a legislative function. It does require a rate that is uniform and equal. *First Nat. Bank* v. *Turner, supra; Louisville, etc., R. Co.* v. *State, ex rel.* (1865), 25 Ind. 177, 180; *Commissioners, etc.,* v. *Nelson* (1877), 19 Kan. 234, 27 Am. Rep.

101; *Edwards* v. *People* (1878), 88 Ill. 340; *People, ex rel.,*
v. *Reardon* (1896), 184 N. Y. 431, 77 N. E. 970, 8 L. R. A.
(N. S.) 314, 112 Am. St. 628.

The exemption of any property necessarily produces inequality, and confers rights on some which are not granted to others, and thereby increases the burdens which they must bear. But in a very careful opinion this court has held that the deduction of a mortgage indebtedness of $700 is not violative of the constitutional provision with regard to uniformity and equality, and that different occupations and different classes of property may be differently classified for taxation. *State, ex rel.,* v. *Smith* (1902), 158 Ind. 543, 63 L. R. A. 116. See, also, *Harn* v. *Woodard* (1898), 151 Ind. 132; *Merchants, etc., Bank* v. *Pennsylvania* (1897), 167 U. S. 461, 17 Sup. Ct. 829, 42 L. Ed. 236; *Bressler* v. *Wayne County* (1891), 32 Neb. 834, 49 N. W. 787, 13 L. R. A. 614.

If there is reason for the classification as between a mortgagor and a nonmortgagor, or other real estate owners, we are unable to say that there is no reasonable ground for classification as between the business of banking and that of private individuals. Banks of all kinds occupy a *quasi*-public relation, and under the present law are subject to visitation. We have seen that the practical effect of the act is to put the assessment as to unincorporated banks on an equality with the assessment of shares in incorporated banks, and that the net valuation for taxation is practically the same. As to individuals, we cannot say that the classification is not based upon a real distinction, or that it does not inhere in the subject-matter. There is some ground for the classification, and there our inquiry ends. One of these grounds is the distinction between the amount of tangible property not otherwise taxed, in proportion to the assets and business conducted, in which the assets are essentially money, bills and accounts receivable, or intangible property. Another important factor is that good business

methods, if not the law, require a bank to carry such a reserve as will meet the demands upon it, which persons in ordinary business would not be called upon to do. *Indianapolis St. R. Co.* v. *Robinson* (1901), 157 Ind. 232; *Barrett* v. *Millikan* (1901), 156 Ind. 510, 83 Am. St. 220; *Nicol* v. *Ames* (1899), 173 U. S. 509, 19 Sup. Ct. 522, 43 L. Ed. 786; *Florer* v. *Sheridan, supra; State* v. *Northern Pac. R. Co.* (1905), 95 Minn. 43, 103 N. W. 731.

As to the contention that the act violates the Constitution, in that it is a local and special law for the assessment and collection of taxes, we are unable to agree with appellant.

If it be admitted that a reasonable classification may be made, and that courts can interfere only where it shall appear that the classification is unreasonable and arbitrary, then such act cannot be violative of the Constitution. It clearly is not a local or special act, for it is of general and uniform operation throughout the State. It practically classes all banks together, so far as the manner of arriving at the valuation for taxation is concerned, and it is not special for the same reason, and for the further reason that it operates alike on all coming within the classification, or under like circumstances. *Gilson* v. *Board, etc.* (1891), 128 Ind. 65, 11 L. R. A. 835; *Hanlon* v. *Board, etc.* (1876), 53 Ind. 123; *Palmer* v. *Stumph* (1868), 29 Ind. 329; *Bright* v. *McCullough* (1866), 27 Ind. 223.

A similar statute of Ohio—except that the chattel, or tangible property employed in the banking business was separately taxed—was reviewed in *First Nat. Bank* v. *Chapman* (1899), 173 U. S. 205, 19 Sup. Ct. 407, 43 L. Ed. 669, and it was held that as the manner of assessing produced practically the same results, in case of unincorporated banks as in case of incorporated banks, there could not be said to be any discrimination.

The taxable value, as applied to the business of banking, is the value of the assets, less the liabilities, but if the bank

is taxed for money on hand and in the hands of 20. others, and on all property other than real estate, and the depositor pays on the deposit, it is clear that double taxation results, because, so far as the deposits equal the value of the assets, they represent but one value, and the real value is the excess, if any, of the credit over the debit account. It is not exemption but deduction in valuation.

We are however not called upon to determine the 21. question whether the provision for the deduction from other property specified in the sixth clause of §8469, *supra*, as "all other property appertaining to said business" is invalid, under a well-known rule that the constitutionality of an act will not be determined when the act is not so interwoven that the whole must fail if any portion is invalid, or the cause may be disposed of on other grounds, for the complaint is sufficient as to the remainder of the demand, and if appellant desired to present the question as to the sixth item, it should have been presented under an answer, but even if eliminated, appellees have paid on more than the valuation of that item.

The statute is too plain and specific to have been the result of other than deliberate intention, and the question is thus resolved into one of power.

The court did not err in its ruling, and the judgment is affirmed.