GRAND TRUNK WESTERN RAILROAD COMPANY v CITY OF
FENTON

Docket No. 116341. Submitted April 18, 1990, at Lansing. Decided
June 5, 1990. Leave to appeal applied for.

The City of Fenton passed an ordinance which set a maximum
speed limit of twenty-five miles per hour for freight trains
operating in the city. Grand Trunk Western Railroad Company
filed suit against the City of Fenton in Genesee Circuit Court,
seeking injunctive and declaratory relief on the grounds that
the ordinance violates the Supremacy and Commerce Clauses
of the United States Constitution. The court, Earl E. Borra-
daile, J., granted summary disposition in favor of Grand Trunk,
finding that the ordinance violated the Supremacy Clause. The
City of Fenton appealed.

The Court of Appeals *held:*

The Federal Railway Safety Act preempts a nonfederal safety
law unless that law is expressly authorized by the act. The act
specifically states that all rules relating to railroad safety shall
be nationally uniform, with only two exceptions allowed for
state action. The plain language of the exceptions indicates
that only a state may adopt a more stringent railway safety
law in response to a local safety hazard. Thus, municipalities
are preempted from passing more stringent train speed limits
than those set forth in the federal law. The circuit court did
not err in enjoining enforcement of the ordinance and declaring
it unconstitutional.

Affirmed.

MUNICIPAL CORPORATIONS — RAILROADS — TRAIN SPEED LIMITS —
FEDERAL RAILWAY SAFETY ACT.

Municipalities are preempted by the Federal Railway Safety Act
from passing more stringent train speed limits than those set
forth in federal law (45 USC 434).

*Gregory A. Roberts,* for plaintiff.

REFERENCES
Am Jur 2d, Railroads §§ 25, 28, 366-369.
See the Index to Annotations under Pre-emption; Railroads.

*Douglas J. Callahan,* for defendant.

Amicus Curiae:

*Feiler, Joelson, Lakind & Rosenberg* (by *Michael H. Feiler*), for Michigan Municipal League.

Before: WEAVER, P.J., and GILLIS and CAV-ANAGH, JJ.

PER CURIAM. This suit arises from an ordinance[1] passed by defendant, the City of Fenton, which set a maximum speed limit of twenty-five miles per hour for freight trains operating in the city. Plaintiff, Grand Trunk Western Railroad Company, brought this action for injunctive and declaratory relief on the grounds that the ordinance violates the Supremacy and Commerce Clauses of the United States Constitution. Plaintiff moved for summary disposition, which the circuit court granted, finding that the ordinance violated the

---

[1] The ordinance reads in pertinent part as follows:

AN ORDINANCE TO PLACE A SPEED LIMIT ON FREIGHT TRAINS OPERATING IN THE CITY OF FENTON

WHEREAS, over the years a number of fatal accidents have occurred on railroad grade crossings in the City of Fenton; and

WHEREAS, the State of Michigan has preempted the right to set maximum speed limits of passenger railroad trains but has left open to municipalities the right to set reasonable maximum speed limits on freight railroad traffic;

THE CITY OF FENTON ORDAINS:

1. That the maximum speed limit of railroad trains operating in the City of Fenton is hereby limited to 25 miles per hour.

2. Any violation of the provisions of this ordinance shall be considered a misdemeanor punishable by up to 90 days in jail and/or a fine of not to exceed $500.00.

3. The person in immediate charge and control of a train and/or any railroad company or corporation, owning or operating any railroad in violation of the provisions of this ordinance may be charged with the violation of the provisions of this ordinance.

4. This ordinance shall be effective fifteen (15) days after enactment and after publication required by law.

Supremacy Clause. Defendant appeals as of right, and we affirm.

The parties dispute no issue of fact relevant to the constitutional issues; the matter presents a purely legal question properly addressed under MCR 2.116.

In 1900 the United States Supreme Court recognized the power of municipalities to regulate train speeds, stating:

> [A] city, when authorized by the legislature, may regulate the speed of railroad trains within the city limits. . . . Such act is, even as to interstate trains, one only indirectly affecting interstate commerce, and is within the power of the state until at least Congress shall take action in the matter. [*Erb v Morasch,* 177 US 584, 585; 20 S Ct 819; 44 L Ed 897 (1900).]

Since that time the United States Congress has passed the Federal Railway Safety Act, 45 USC 421 *et seq.* Thus the issue before us, one of first impression in our state courts, is whether the FRSA preempts the power of Michigan cities to regulate the speed of railroads within their city limits.

I

Defendant first argues that the FRSA did not intend a total preemption of the power to regulate train speeds.

Congress may, within certain constitutional limits, preempt state and local governments' legislative authority in a given subject area. *Wardair Canada, Inc v Florida Dep't of Revenue,* 477 US 1; 106 S Ct 2369; 91 L Ed 2d 1 (1986). Congressional intent determines whether federal law preempts a particular state or local law. When Congress enacts a statute which by its language expressly

provides that states cannot legislate in a given subject area, preemption is clear. *Fidelity Federal Savings & Loan Ass'n v de la Cuesta,* 458 US 141; 102 S Ct 3014; 73 L Ed 2d 664 (1982). When statutory language is less clear, state law will be adjudged preempted if federal law so pervades a given field as to evince a congressional intent to exclusively occupy the field. *Silkwood v Kerr-McGee Corp,* 464 US 238; 104 S Ct 615; 78 L Ed 2d 443 (1984).

Despite defendant's arguments to the contrary, it is clear that Congress has exhaustively regulated the area of railroad safety. Section 434 of the FRSA specifically states that all rules relating to railroad safety shall be nationally uniform, with only two exceptions allowed for state action.

We agree with the courts that have held that § 431 and § 434 of the FRSA can be interpreted only as a declaration of congressional intent to preempt state law in the entire area of railroad safety. See *National Ass'n of Regulatory Utility Comm'rs v Coleman,* 542 F2d 11 (CA 3, 1976); *Donelon v New Orleans Terminal Co,* 474 F2d 1108 (CA 5, 1973), cert den 414 US 855; 94 S Ct 157; 38 L Ed 2d 105 (1973); *Atchinson, T & S F R Co v Illinois Commerce Comm,* 453 F Supp 920 (ND Ill, 1977). Thus, a nonfederal safety law will be preempted unless expressly authorized under the FRSA.

## II

Defendant next argues that the city's ordinance falls within the exceptions established by § 434. The exceptions provide:

1) A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary

has adopted a rule, regulation, order, standard covering the subject matter of such State requirement.

2) A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

The Fenton ordinance finds no support under the first exception. The Secretary of Transportation has enacted regulations specifically designating permissible operating speeds for various classes of track. 49 CFR 213.9. Thus, Fenton's more stringent local ordinance cannot coexist with the federal regulations.

In asserting that its ordinance is permitted by the second exception, the city argues that the state has delegated to the cities its power to control train speeds within city limits, citing the home rule cities act, MCL 117.4h(1); MSA 5.2081(1), and Const 1963, art 7, § 29.

We need not determine whether this authority has in fact been delegated, as the plain language of the exception indicates that only a *state* may adopt a more stringent railway safety law in response to a local safety hazard. *Chesapeake & O R Co v City of Bridgman,* 669 F Supp 823 (WD Mich, 1987).

An amicus curiae brief was filed with this Court by the Michigan Municipal League, which represents 501 cities and villages in the State of Michigan. If we were to interpret § 434 to mean that each of its clients alone could impose a speed limit on trains through its city borders, we would frus-

trate the stated purpose of the FRSA, to have a uniform, national system of railroad regulation.

Since municipalities are not included in this preemption exception, municipalities are preempted from passing more stringent train speed limits than those set out in 49 CFR 213. *Chesapeake & O R Co v City of Bridgman, supra,* p 826.

We find the circuit court did not err in enjoining enforcement of the ordinance and declaring it unconstitutional.

Affirmed.